## In re TAYLOR.

(District Court, S. D. Georgia, W. D. June 13, 1910.)

BANKRUPTCY (§ 414*)—DISCHARGE—CONCEALMENT.

Evidence *held* to justify a finding that the bankrupt, prior to bankruptcy, had sold a large part of his property, and had fraudulently concealed the property and the proceeds, precluding a discharge.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 720–722; Dec. Dig. § 414.*]

In the matter of the bankruptcy proceedings of W. W. Taylor. On exceptions to the report of a special master denying a discharge. Exceptions overruled.

W. M. Morrison, D. M. Roberts & Son, and Akerman & Akerman, for bankrupt.

Hardeman, Jones, Callaway & Johnston and Wm. E. Martin, Jr., for objecting creditors.

SPEER, District Judge (orally). It appears from the report of the master that at the time the schedules were filed the bankrupt owed state and county taxes, $40, and for unsecured claims, $9,763.84.

It is alleged by the creditors that while a bankrupt, and within less than four months immediately preceding the filing of his petition, he voluntarily sold a large amount of his property, of the value of $8,000; that he failed to keep books of account or records, from which his condition might be ascertained; and that he also made a false oath in reference to his bankruptcy schedules, in that he testified under oath that the schedules contained an account of all of his estate, both real and personal, a statement widely variant from the veracities of the record.

The evidence reported by the special master disclosed the fact that Taylor had been in the mercantile business in previous years, and that in the fall of 1906 he sold out his mercantile business to one J. C. Sapp. For this he obtained between $1,100 and $1,200 in mules and corn and land, and after selling out his property he only owed about $200. That was in the fall of 1906. On the 1st of February, 1907, he again entered into business, and bought much merchandise between the latter date and the date on which the bankruptcy proceeding was filed against him. During the 10 months he was last engaged in business, he purchased and disposed of merchandise and guano in the sum of $9,763; and at the time that the trustee took possession of the assets none of the merchandise was found in the bankrupt's possession, and only about $500 worth of notes and accounts. In addition to the amounts he received from the goods bought, for which his creditors were not paid, he sold mules owned by him in the fall of 1907 for the aggregate sum of $1,320. He also sold numerous pieces of realty, for which he received $1,070, which makes a total of cash received from the sales of mules and land of $2,390, thus making the live stock, guano, merchandise, and land aggregate over $12,000 turned into actual cash during the fall of 1907.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Now the special master finds that the bankrupt started out with what he terms a "clean sheet" on the 1st of February, 1907. The expression "clean sheet" is figurative, but in the commercial mind imports, perhaps, that the bankrupt was practically out of debt at that time. In the year 1906 he returned property for taxation amounting to $7,602, and then owed none of the debts now proven in bankruptcy. The small indebtedness of $300 which he owed at the time he sold out, as we have seen, had been paid before he entered business again. The bankrupt admitted all of these facts, he admitted the sale of the merchandise, and he also admitted the collection of the guano notes and merchandise accounts, so that the merchandise and guano that he owed for, according to his schedules, and which he sold, together with the amounts derived from the sales of live stock and realty, amounted to $12,000. This was not accounted for. His explanation is that he lost all his money in buying cotton. He testified that he bought spot cotton at his gin and his place of business, and the cotton lost in weight. He said this loss in weight amounted to 15 or 30 pounds a bale, or an average of about 15 pounds a bale. He also testified that the average price of the cotton bought by him during the season was 11 cents, and by his own calculation, if the cotton bought lost 15 pounds a bale, it would amount to only $1.65 a bale. He stated that he bought about 250 bales of cotton. The loss, therefore, on 250 bales of cotton, would amount to $412.50. His loss on price, from his own statement, would be about $7.50 a bale. This would amount to $1,875, or a total loss on price and weight of $2,287.50. It is true that he testified that in the aggregate he lost between $4,000 and $5,000 on this cotton. But, if this be conceded, according to the figures of the master, there would be still unaccounted for $9,750, almost the exact amount of goods and merchandise bought by him, and sold and collected for, and not paid for.

From these facts, the master, in my opinion, very justifiably reaches the conclusion that Taylor has sold a large part of his property, the values which resulted from this business, and has concealed the proceeds. It is also true that his wife returned no property for taxation anterior to these occurrences; but during the year 1907 she purchased 100 acres of land from one John Walter, for which she paid $500, the purchase price being $1,600. She also purchased other lands, amounting to $900. The evidence is not satisfactory, in the opinion of the special master, as to where this money came from, although the bankrupt testified that his wife received $3,800 from the sale of a place bought with money inherited from her father, and that she had kept that sum for a number of years in a little zinc trunk in her house. This testimony does not appear to the court to have very much probative value. These sums not hitherto disclosed by the wife are suggestive. There, too, was a large amount of cotton seed purchased, for which he made no account. His gin burned up in 1907, and he collected insurance on the property. After the gin burned, he bought more cotton, and kept no record of it. He did keep books, according to the report of the special master; but he declined to state, or failed to state, to whom he shipped the cotton at either Dublin or Eastman. He sold his stock of merchandise at a sacrifice, beginning about the

1st of October, 1907, and this is coincident with his failure to keep a record of his purchases of cotton. The trustee testified that no books or statements were turned over to him by the bankrupt, although he demanded them of him. An attorney testified that a few days before the petition was filed Taylor said he had $200 cash in hand. He does not account for this, except he states he spent a lot of it in coming to Macon. He only made three trips to Macon, and could not show any expense over $10 for each trip; his expenses amounting in all to $30. There is much more on the same line.

Take the case all together, it is one of the most remarkable and deliberate cases of fraudulent concealment of property by a bankrupt that has come to the attention of the court. The conclusions of the special master, in his clear and valuable opinion, are held to be correct. The statement of learned counsel that there is no evidence to support those conclusions, without any effort to point out error on the part of the master, is not satisfactory.

For these reasons, the court feels obliged to sustain the report of the special master, and to direct that the discharge be refused.